UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

INVENTORS ROW INC.,

          Plaintiff,

   v.

PAULA BLANKENSHIP dba NODPOD;
and DOES 1-5,

          Defendant.

Civ. No. 17-2387 WBS EFB

MEMORANDUM AND ORDER RE:
MOTION TO DISMISS, OR, IN THE
ALTERNATIVE, TO TRANSFER
VENUE

----oo0oo----

       Plaintiff Inventors Row Inc., brought this action
against defendants Paula Blankenship doing business as Nodpod
("defendant" or "Blankenship") and Does 1-5 arising out of
defendant's alleged trademark infringement.  The matter is now
before the court on defendant Blankenship's Motion to Dismiss the
Complaint or, in the Alternative, to Transfer Venue.  (Docket No.
8.)

I.   Factual and Procedural Background

       Plaintiff is the owner of a California corporation with

1

its principal place of business in Rocklin, California that develops, markets, distributes, and sells pillows, including travel pillow attachments. (Compl. ¶ 2 (Docket No. 1).) Defendant is the owner of a privately-owned business with its principal place of business in Shepherdsville, Kentucky that also develops, markets, distributes, and sells travel pillows. (Id. ¶ 1.) Plaintiff alleges that defendant transacts substantial business nationwide via internet sales. (Id. ¶ 3.)

Beginning in October of 2014, plaintiff began advertising, marketing, and distributing the NODPOD pillow. (Id. ¶ 9.) On March 12, 2015, plaintiff submitted an application for a design mark in the United States Patent and Trademark Office ("USPTO") on the Principal Register, registration number 5173967, containing the words "NODPOD EYE PILLOW." (Id. ¶¶ 12, 13.) On January 17, 2016, the design mark was published. (Id. ¶ 13.)

Beginning in 2016, defendant began advertising, marketing, and distributing a NODPOD pillow. (Id. ¶ 10.) On March 18, 2016, defendant filed a trademark application for "NODPOD." (Id. ¶ 14.) On June 29, 2016, defendant received a suspension notice from the USPTO informing them of the conflict with plaintiff's application. (Id.) On July 26, 2016, defendant launched a Kickstarter Campaign for the NODPOD travel pillow and by September of 2016 defendant raised $307,274 from 7,280 backers through Kickstarter, and $328,081 through an Indiegogo campaign. (Id. ¶¶ 15, 16.) Defendant's version of the NODPOD pillow was published or featured in at least 30 media sources including, among others, Cosmopolitan, Elle, The Telegraph, The Huffington Post, and the Today Show. (Id. ¶ 18.) On April 4, 2017, a

registration certificate was issued to plaintiff by the USPTO. (Id. ¶ 13.)

As a result of defendant's media campaign, plaintiff alleges that it has been harmed because consumers and marketers confuse defendant's product and brand with plaintiff's product and brand.  (See id. ¶ 20.)  In addition, plaintiff alleges that defendant has committed and continues to commit acts of trademark infringement against plaintiff.  (Id. ¶ 21.)  On November 13, 2017, plaintiff filed a Complaint against defendant for: (1) trademark infringement under section 32(1) of the Lanham Act; (2) false representations in commerce and false designation of origin under section 43(a) of the Lanham Act; (3) federal unfair competition under section 43(a) of the Lanham Act; and (4) trademark infringement under California common law.  (Compl.) Plaintiff seeks damages, an accounting, the imposition of a constructive trust upon defendant's illegal profits, and injunctive relief.  (Id.)

III.  Discussion

    A.    Rule 12(b)(2) Motion

        A plaintiff has the burden of establishing that the court has personal jurisdiction over a defendant.  Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).  Where the court does not hold an evidentiary hearing and the motion is based on written materials, the plaintiff need only establish a prima facie showing of personal jurisdiction.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004); see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977) ("[I]f a plaintiff's proof is limited to written

3

materials, it is necessary only for these materials to demonstrate facts [that] support a finding of jurisdiction in order to avoid a motion to dismiss."). "A 'prima facie' showing means that the plaintiff need only demonstrate facts that, if true, would support jurisdiction over the defendant." Am. Orthodontics Corp. v. MidAtl. Orthodontics, Inc., Civ. No. 3:17-1129 BEN AGS, 2017 WL 4151241, at *2 (S.D. Cal. Sept. 18, 2017). To meet its burden, "the plaintiff cannot simply rest on the bare allegations of its complaint, . . . uncontroverted allegations in the complaint must be taken as true," and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger, 374 F.3d at 800.

If there is no applicable federal statute governing personal jurisdiction, the court applies the law of the state in which it sits. Love v. Associated Newspapers, Ltd., 611 F.3d 601, 608-09 (9th Cir. 2010). "California's long-arm jurisdiction statute is coextensive with federal due process requirements." Id.; see also Cal. Code Civ. Proc. § 410.10. Due process requires that for a nonresident defendant to be subject to the court's jurisdiction, the defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction. Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015) (citing Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014)).

The parties do not dispute that defendant is not subject to general jurisdiction in California. The sole dispute is whether defendant is subject to specific jurisdiction in California.

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). The Ninth Circuit uses a three-prong test to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)) (internal quotation marks omitted).

"The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." Id. Once the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985)).

    1.   Purposeful Availment or Direction

5

Under the first prong, plaintiff must establish that defendant "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." Schwarzenegger, 374 F.3d at 802. While courts use the term "purposeful availment," to include both purposeful availment and purposeful direction, availment and direction are, in fact, two distinct concepts. Id. "Purposeful availment typically consists of action taking place in the forum that invokes the benefits and protections of the laws of the forum." Advice Co. v. Novak, Civ. No. 08-1951 JCS, 2009 WL 210503, at *9 (N.D. Cal. Jan. 23, 2009) (citing Schwarzenegger, 374 F.3d at 802). "Purposeful direction usually consists of actions outside the forum state that are directed at the forum." Id. "A purposeful availment analysis is most often used in suits sounding in contract . . . [while] [a] purposeful direction analysis . . . is most often used in suits sounding in tort." Schwarzenegger, 374 F.3d at 802 (internal citations omitted).

"For trademark infringement actions, the Ninth Circuit requires a showing of purposeful direction." AirWair Int'l Ltd. v. Schultz, 73 F. Supp. 3d 1225, 1232-33 (N.D. Cal. 2014) (citing Nissan Motor Co. v. Nissan Comput. Corp., 246 F.3d 675 (9th Cir. 2000)). Purposeful direction is evaluated under the "effects test" derived from Calder v. Jones, 465 U.S. 783 (1984). Under the "effects test" the defendant must have: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874

F.3d 1064, 1069 (9th Cir. 2017).

a.    <u>Intentional Act</u>

In the context of the <u>Calder</u> "effects test," an intentional act refers to "an intent to perform an actual, physical act in the real world." <u>Schwarzenegger</u>, 374 F.3d at 806. "The threshold of what constitutes an intentional act is relatively low." <u>AirWair</u>, 73 F. Supp. 3d at 1233. Here, defendant's alleged sales of an infringing good constitute intentional acts under the <u>Calder</u> effects test. <u>See</u> <u>Cal. Brewing Co. v. 3 Daughters Brewing LLC</u>, Civ. No. 2:15-2278 KJM CMK, 2016 WL 1573399, at *3 (E.D. Cal. Apr. 19, 2016) (marketing and selling products that allegedly infringed plaintiff's trademark constituted intentional acts); <u>see also</u> <u>Wash. Shoe Co. v. A-Z Sporting Goods Inc.</u>, 704 F.3d 668, 674 (9th Cir. 2012), <u>abrogated on other grounds by</u> <u>Axiom Foods, Inc. v. Acerchem Int'l, Inc.</u>, 874 F.3d 1064 (9th Cir. 2017) (purchasing and selling boots that allegedly infringed on plaintiff's copyright constituted an intentional act within the meaning of the <u>Calder</u> effects test). Accordingly, the court finds that the first prong of the <u>Calder</u> "effects test" is met.

b.    <u>Expressly Aimed</u>

The second prong of the <u>Calder</u> effects test, asks whether defendant "expressly aimed its intentional act at the forum." <u>Axiom Foods</u>, 874 F.3d at 1069. To determine whether the defendant expressly aims at the forum state, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." <u>Walden v. Fiore</u>, 134 S. Ct.

1115, 1125 (2014).  Thus, "mere injury to a forum resident is not
a sufficient connection to the forum," nor is defendant's
knowledge of plaintiff's strong forum connections, combined with
the foreseeable harm the plaintiff suffered in the forum.  See
id.

In Washington Shoe, the Ninth Circuit held that a
theory of "individualized targeting" satisfied the express aiming
requirement.  See Wash. Shoe, 704 F.3d at 675.  "A theory of
individualized targeting alleges that a defendant 'engaged in
wrongful conduct targeted at a plaintiff whom the defendant knows
to be a resident of the forum state.'"  Axiom Foods, 874 F.3d at
1069 (quoting Wash. Shoe, 704 F.3d at 675).  However, the Supreme
Court in Walden made clear that the court must look to the
"defendant's 'own contacts' with the forum, not to the
defendant's knowledge of a plaintiff's connections to a forum."
Id. at 1070 (citing Walden, 134 S. Ct. at 1124-25).  In light of
Walden, the Ninth Circuit recently held that "[w]hile a theory of
individualized targeting may remain relevant to the minimum
contacts inquiry, it will not, on its own, support the exercise
of specific jurisdiction, absent compliance with what Walden
requires."  Axiom Foods, 874 F.3d at 1070-71.

"The Ninth Circuit utilizes the 'sliding scale'
approach . . . to determine whether the operation of a website
supports the exercise of personal jurisdiction."[1]  Dale Tiffany,

---

[1]      "Axiom Foods did not explicitly answer how Walden
applies to cases where all of the alleged activity occurs online
. . . However, the Axiom Foods decision does suggest that minimal
online activity, when unaccompanied by any connections to the
forum state in the physical world, are not enough to confer
personal jurisdiction."  Republic of Kazakhstan v. Ketebaev, Civ.

Inc. v. Meyda Stained Glass, LLC, Civ. No. 2:17-00536 CAS AGRX, 2017 WL 4417585, at *6 (C.D. Cal. Oct. 2, 2017) (citing Cybersell, Inc., v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997)).  Under this approach, the court considers the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Cybersell, 130 F.3d at 418 (9th Cir. 1997).

"A passive website 'that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction.'" Dale Tiffany, 2017 WL 4417585, at *6 (citation omitted).  However, "operating a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." Sec. Alarm Fin. Enters., L.P. v. Nebel, 200 F. Supp. 3d 976, 985 (N.D. Cal. 2016) (quoting Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002)).  In determining whether a nonresident defendant has done "something more," the Ninth Circuit has considered several factors, "including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1229 (9th Cir. 2011) (internal citations omitted).  Furthermore, "[d]istrict courts in this circuit have generally found that online product sales to residents of the forum are sufficient to satisfy this 'something more' requirement in trademark infringement cases."

No. 17-246-LHK, 2017 WL 6539897, at *6 (N.D. Cal. Dec. 21, 2017).

9

Nat. Wellness Centers of Am., Inc. v. Golden Health Prod., Inc., Civ. No. 12-05586 CW, 2013 WL 245594, at *4 (N.D. Cal. Jan. 22, 2013).

"[A]n interactive website through which 'the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files' justifies a court's exercise of personal jurisdiction.'" Dale Tiffany, 2017 WL 4417585, at *6 (citation omitted).  If the website falls somewhere in between passive and interactive, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." See id. (quoting Cybersell, 130 F.3d at 419).

In this case, plaintiff alleges that defendant was aware of plaintiff's residence in the forum state and could foresee that plaintiff would be harmed in California because defendant received a suspension notice from the USPTO informing defendant of the conflict with plaintiff's trademark application. (Compl. ¶ 14.)  Additionally, plaintiff's trademark registration identifies plaintiff as a California corporation.  Furthermore, defendant admits that she spoke to plaintiff prior to infringement, and also attempted to negotiate with plaintiff to either coexist or to purchase the name "NODPOD EYE PILLOW." (Pl.'s Opp'n (Docket No. 13) at 2; Blankenship Decl. ¶¶ 11-12 (Docket No. 8-2).)  Thus, these contacts are sufficient to establish individualized targeting.  See Ford Motor Co. v. Great Domains, Inc., 141 F. Supp. 2d 763, 777 (E.D. Mich. 2001) (citing Panavision, 141 F.3d at 1321) ("Relevant considerations in

assessing the level of individual targeting include [] whether
the trademark owner has been directly solicited to purchase the
domain name.")  Therefore, the court considers, but does not rely
solely on, plaintiff's allegations that defendant intentionally
infringed on plaintiff's trademark and knew that plaintiff was
located in California in conducting the "minimum contacts"
analysis.[2]  (Compl. ¶ 19; Pl.'s Opp'n at 2-4.)

        Defendant also created contacts with California by
selling goods to California residents through Kickstarter,
Indiegogo, and its website.  (Compl. ¶ 15, 16; Pl.'s Opp'n at 2.)
Of the 7,280 backers of defendant's travel pillow on Kickstarter,
128 came from Los Angeles, and 99 came from San Francisco.
(Pl.'s Opp'n, Ex. B (Docket No. 13-2).)  These contacts are more
than "[r]andom, fortuitous, or attenuated contacts."  See Burger
King Corp, 471 U.S. at 475.  The Kickstarter campaign is more
than a passive website, as the website is not purely
informational.  See Dale Tiffany, 2017 WL 4417585, at *6.
Furthermore, the "nature and quality of commercial activity,"
including defendant's online sales to more than 200 California
residents, provides the "something more" necessary to establish
conduct that directly targets the forum.

        Furthermore, other courts have considered crowdfunding

_____

        [2]    Plaintiff also argues that defendant engaged in an
aggressive media marketing campaign as defendant's product was
featured in articles by bloggers, in newspapers, in magazines,
and on television.  While this media marketing campaign may have
reached California residents, the Ninth Circuit has made clear
that a defendant cannot be haled into court based upon the
unilateral activities of third parties.  Brainerd v. Governors of
the Univ. of Alberta, 873 F.2d 1257, 1259 (9th Cir. 1989) (citing
Burger King, 471 U.S. at 475).

websites like Kickstarter and Indiegogo in holding that the court may exercise specific personal jurisdiction over a party. See Imation Corp. v. Sanho Corp., Civ. No. 15-1883 (JRT/JSM), 2016 WL 4179363, at *1 (D. Minn. Aug. 5, 2016) (finding specific personal jurisdiction over a Delaware corporation with its principal place of business located in California where at least one of the company's Kickstarter backers was a Minnesota resident and plaintiff presented evidence that many, if not all, of defendant's backers were sent the infringing product); Robinson v. Bartlow, Civ. No. 3:12-24, 2012 WL 4718656, at *4 (W.D. Va. Oct. 3, 2012) (finding specific personal jurisdiction over Washington company where company shipped products to Virginia residents through the Kickstarter fundraising websites). Compare Nutramarks, Inc. v. Life Basics, LLC, Civ. No. 2:15-571-DN, 2017 WL 2178422, at *5 (D. Utah May 17, 2017) (finding no specific personal jurisdiction over Illinois company that launched its crowdfunding campaign using Indiegogo where none of the crowdfunding donors were from Utah and there were no other facts to show that the company targeted or solicited any donations or business in the State of Utah).

In response, defendant alleges that none of the products made and shipped in relation to the Kickstarter campaign, or at any other time, bore the mark Nodpod; however, plaintiff contends that contrary to defendant's claims, no significant rebranding took place. (Blankenship Decl. ¶ 18; Pl.'s Opp'n at 3.)[3] "Because the prima facie jurisdictional

---

[3] To support its contention that no significant rebranding took place, plaintiff attaches a screen capture of

12

analysis requires us to accept the plaintiff's allegations as true, we must adopt [plaintiff's] version of events for purposes of this [motion]." <u>Bancroft & Masters, Inc. v. Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1087 (9th Cir. 2000); <u>see also</u> <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1154 (9th Cir. 2006) ("[F]or the purpose of [plaintiff's demonstration that the court has jurisdiction over the defendant], the court resolves all disputed facts in favor of the plaintiff.") Thus, accepting plaintiff's allegations as true, defendant committed acts of trademark infringement against plaintiff when it sold its products on Kickstarter.

Accordingly, the court finds that plaintiff has met the express aiming prong of the <u>Calder</u> "effects test."

### c. <u>Causing Harm</u>

Under the third prong of the <u>Calder</u> test, defendant must have caused harm that the defendant knows is likely to be suffered in the forum state. Here, defendant knew that plaintiff resided in California, and defendant spoke to Ms. Bamberg and attempted to negotiate with her to either coexist or purchase the name "NODPOD EYE PILLOW." (Blankenship Decl. ¶¶ 11-12; Cameron Decl. ¶ 3 (Docket No. 8-3).) Defendant also admits to receiving the suspension letter for the Nodpod trademark application in July of 2016 (Blankenship Decl. ¶ 6). In addition, plaintiff's trademark registration identifies Melissa Bamberg as a Rocklin,

defendant's Kickstarter campaign that plaintiff says was taken in April of 2017 (Pl.'s Opp'n at 2, Ex. B.) In some of the images, the product contains the word "Nodpod," and in other images the product does not. (<u>Id.</u>) Plaintiff also attached a screen shot from a television show that appears to show use of the mark "Nodpod." (Pl.'s Opp'n, Ex. F.)

13

California resident. (Def.'s Mem., Ex. C.)  Thus, it was
foreseeable that defendant's conduct would cause harm in
California.  (See California Brewing, 2016 WL 1573399, at *5
(finding the foreseeable harm prong of the Calder test met where:
(1) defendant knew plaintiff resided in California, (2) plaintiff
contacted defendant to stop using the mark (3) defendant
investigated plaintiff's use and registration, (4) the USPTO
rejected defendant's application to register a mark in light of
plaintiff's mark, and (5) plaintiff's registration identifies it
as a resident of the district).  Accordingly, plaintiff has
established the third prong of the Calder test.

Because plaintiff has established all three prongs of
the Calder test, plaintiff has established purposeful direction.

2.   Arise Out of

Under the second prong of the Ninth Circuit's specific
jurisdiction test, a court cannot establish personal jurisdiction
over a defendant unless a plaintiff can show that its claims
"arise[ ] out of the defendant's forum related activities."
Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir.
1998).  The Ninth Circuit "use[s] a 'but for' test to conduct
this analysis," under which the court must determine whether,
"but for [defendant's] contacts with California, would
[plaintiff's] claims against [defendant] have arisen?"  Mattel,
Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 864 (9th Cir.
2003); accord Bancroft,223 F.3d at 1088.  "The Ninth Circuit has
recognized that, in trademark or copyright infringement actions,
if the defendant's infringing conduct harms the plaintiff in the
forum, this element is satisfied."  Adobe Sys. Inc. v. Blue

14

Source Grp., Inc., 125 F. Supp. 3d 945, 963 (N.D. Cal. 2015)
(citing Panavision, 141 F.3d at 1322).

Here, as discussed previously, plaintiff has
established that defendant's conduct harms plaintiff in the
forum.  In addition, plaintiff alleges that it suffered harm
because consumers and marketers are unable to identify the
difference between the products, and plaintiff has been denied
covered in media sources that have already covered defendant's
product.  (Compl. ¶¶ 20, 22.)  This is sufficient to show that
plaintiff's claims arose out of defendant's activity, and that
"but for" defendant's contacts with California, plaintiff's
claims would not have arisen.  See Panavision, 141 F.3d at 1322
(finding requirement satisfied where defendant's registration of
plaintiff's trademarks as his own domain name on the Internet had
the effect of injuring plaintiff in California); Adobe, 125 F.
Supp. 3d at 963 (finding requirement satisfied where plaintiff
alleged infringement by defendant in the district by, depriving
plaintiff of revenue, diminishing plaintiff's goodwill, and
diluting plaintiff's trademark).

Accordingly, plaintiff has met the second prong for
personal jurisdiction.

3.    Reasonableness

Because plaintiff has established a prima facie showing
of specific jurisdiction, the burden is now on defendant to
demonstrate why jurisdiction would be unreasonable in light of
traditional considerations of fair play and substantial justice.
See Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1114 (9th Cir.
2002) (citing Burger King, 471 U.S. at 477).  To meet this

burden, a defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." Roth v. Garcia, 942 F.2d 617, 625 (9th Cir. 1991). The Ninth Circuit considers seven factors in determining whether jurisdiction would be reasonable:

> (1) the extent of the defendant's purposeful injection into the forum state's affairs;
> (2) the burden on the defendant of defending in the forum;
> (3) the extent of conflict with the sovereignty of the defendant's state;
> (4) the forum state's interest in adjudicating the dispute;
> (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
> (7) the existence of an alternative forum.

Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995).

Here, defendant argues that personal jurisdiction is unreasonable because defendant has not injected herself in California's affairs, it would be burdensome and expensive for defendant to defend herself in California, and there is a concern that hearing the case in California may conflict with Kentucky's sovereignty. (Def.'s Mem. at 10.) First, as previously discussed, defendant has significantly injected herself into the California economy so as to make jurisdiction in California reasonable. As to the second factor, the court does not believe that defending this suit in California would place an undue burden on defendant given modern advances in communication and transportation. See Panavision, 141 F.3d at 1323. As to the third factor, "concerns for sovereignty are low when the defendant is a citizen of a sister state, not a foreign country."

16

Huang v. Marriott Int'l, Inc., Civ. No. 2:11-01574 WBS, 2012 WL 170166, at *5 (E.D. Cal. Jan. 19, 2012) (citing Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1133 (9th Cir. 2003). Thus, the court finds that this factor does not weigh in favor of defendant.

As to the fourth factor, plaintiff is located in California, and thus "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." See Panavision, 141 F.3d at 1323 (quoting Gordy v. Daily News, L.P., 95 F.3d 829, 836 (9th Cir. 1996)). Under the sixth factor, plaintiff is a resident of California, and thus California is clearly the most convenient forum for plaintiff.

Lastly, addressing the fifth and seventh factor, defendant argues that this case should be brought in Kentucky where the witnesses and products are located, where defendant is located, and where the courts have smaller dockets. (Def.'s Mem. at 11.) No doubt it would be more convenient for each party to have the case tried in its own home jurisdiction, and it is likely that witnesses and evidence are located in both California and Kentucky. However, given "modern advances in communication and transportation, this factor is probably neutral." See Panavision, 141 F.3d at 1324 (9th Cir. 1998). As to the seventh factor, plaintiff does not argue that Kentucky lacks an alternative forum, but only that each state has an equal interest in the case. Thus, because plaintiff has the burden of proving the unavailability of an alternative forum (See Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1490 (9th Cir. 1993)), this

17

factor weighs in favor of defendant.  Nevertheless, because
defendant has not met its burden of presenting a "compelling
case" of unreasonableness, the court will deny defendant's motion
to dismiss for lack of personal jurisdiction.

   B.   Standing

       Defendant also moves to dismiss on the ground that
plaintiff lacks standing.  To have standing, "[t]he plaintiff
must have (1) suffered an injury in fact, (2) that is fairly
traceable to the challenged conduct of the defendant, and (3)
that is likely to be redressed by a favorable judicial decision."
Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, as revised (May
24, 2016).  A plaintiff has standing if he or she has alleged a
"personal stake" in the litigation "to justify exercise of the
court's remedial powers on his behalf.  Nev. Emps.' Ass'n, Inc.
v. Bryan, 916 F.2d 1384, 1391 (9th Cir. 1990) (quoting Arlington
Heights v. Metro. Hous. Corp., 429 U.S. 252, 261 (1977)).
"Section 32(1) of the Lanham Act specifically provides that a
'registrant' may bring a civil action for trademark
infringement."  Lasco Fittings, Inc. v. Lesso Am., Inc., Civ. No.
13-2015 VAP DTBX, 2014 WL 12601016, at *3 (C.D. Cal. Feb. 21,
2014); 15 U.S.C. § 1114(1).

       Here, the trademark registrant is Melissa Bamberg
Corporation, not Inventors Row.  (Def.'s Mem., Ex. C (Docket No.
8-6).)  Melissa Bamberg ("Bamberg") represents that she is the
sole owner of Inventors Row, and that Inventors Row is the sole
owner and assignee of all intellectual property, including the
Nodpod trademark.  (Bamberg Decl. ¶¶ 1-2 (Docket No. 13-7.)
Bamberg explains that when she applied for the trademark, she

18

mistakenly listed "Melissa Bamberg Corporation"[4] on the requisite paperwork instead of Inventors Row.  (Id. ¶ 3.)  Bamberg represents that now that she has an attorney, the appropriate paperwork is in the process of being filed with the USPTO to correct the error.  (Id.)

        At oral argument, counsel for plaintiff represented, without offering any evidence, that Inventors Row does in fact own the trademark.  However, because it is not clear on the record presently before the court that Inventors Row is the owner, the court cannot find that Inventors Row has a personal stake in the outcome of this litigation.  In order to afford plaintiff the opportunity to clear up what appears to have been a clerical mistake, the court will deny defendant's motion to dismiss for lack of standing upon the condition that within 30 days from the date this Order is signed plaintiff provide the court with evidence that it owns the trademark at issue.

        C.    Motion to Dismiss for Improper Venue, or, in the
              Alternative to Transfer Venue

        Rule 12(b)(3) authorizes a court to dismiss an action for improper venue.  Fed. R. Civ. P. 12(b)(3); see also 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").  Plaintiff has the burden of proving that venue is proper in the district in which the suit was initiated.  Munns v.

---

        [4]    Apparently, there is no "Melissa Bamberg Corporation."

Clinton, 822 F. Supp. 2d 1048, 1079 (E.D. Cal. 2011) (England, J.) (citing Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979)). "In considering a motion to dismiss for improper venue, a court is not required to accept the pleadings as true and may consider facts outside the pleadings." Presidio Home Care, LLC v. B-E., LLC, Civ. No. 14-1864 RSWL JEMX, 2014 WL 2711299, at *2 (C.D. Cal. June 13, 2014). However, "the trial court must draw all reasonable inferences in favor of the nonmoving party and resolve all factual conflicts in favor of the non-moving party." Id. (quoting Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2003)).

Venue as to a trademark claim is evaluated under the general venue statute, 28 U.S.C. § 1391(b). Kaia Foods, 70 F. Supp. 3d at 1184. Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). This provision "does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate." Rodriguez v. Cal. Highway Patrol, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000).

In a trademark infringement action, "a substantial part of the events occur . . . where confusion of purchasers is likely to occur," Kaia Foods, Inc. v. Bellafiore, 70 F. Supp. 3d 1178, 1184 (N.D. Cal. 2014), "whether that occurs solely in one district or in many." Allstar Mktg. Grp., LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009) (citations omitted). "Confusion of customers occurs where the

passing off occurs, that is, 'where the deceived customer buys the defendant's product in the belief that he is buying the plaintiffs.'" Kaia Foods, 70 F. Supp. 3d at 1184 (quoting Sykes Lab., Inc. v. Kalvin, 610 F. Supp. 849, 860 n. 8 (C.D. Cal. 1985)). "Venue may be proper even where the defendant sells only a small amount of merchandise into the forum." Adidas Am., Inc. v. Cougar Sport, Inc., 169 F. Supp. 3d 1079, 1095 (D. Or. 2016).

Here, plaintiff alleges that a substantial part of the events giving rise to their tort claims occurred in the Eastern District of California. Plaintiff alleges that defendant transacts substantial business nationwide via internet sales. (Compl. ¶ 3.) Plaintiff provides evidence that of the 7,280 backers of defendant's product on Kickstarter, 227 were California residents. (Pl.'s Opp'n, Ex. B). Plaintiff asserts that it is almost certain the defendant sold products in this district. Thus, given that plaintiff is located in the Eastern District of California, the plaintiff has shown a likelihood of consumer confusion in this district. See California Brewing, 2016 WL 1573399, at *7 (finding venue is proper where "the complaint alleges a likelihood of consumer confusion in [the] district, where plaintiff is based, as a result of defendants' sales, marketing, and advertising to California consumers"); Allstar Mktg. Grp., LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009) (denying defendants' Motion to Dismiss for improper venue where plaintiffs "adduced evidence that 19% of defendants' sales of the products at issue occur in California, but evidence of defendants' products in this district, however, is at best minimal.")

1    Moreover, defendant does not dispute that it sold
2  products in the Eastern District of California; instead,
3  defendant alleges that its products did not infringe on
4  plaintiff's trademark.  On a motion to dismiss for improper
5  venue, courts accept as true uncontroverted allegations.  <u>See</u>
6  <u>Allstar</u>, 666 F. Supp. 2d at 1129–30.  Thus, the court accepts as
7  true the fact that defendant made sales in this district.  <u>See</u>
8  <u>id.</u>, at 1128 (noting that "defendant[], who [is] in the best
9  position to adduce evidence regarding [its] sales in this
10 district, have come forward with no evidence controverting
11 plaintiff['s] allegations regarding [its] sales.").

12    Accordingly, because venue is proper is this district,
13 the court will deny defendant's Motion to Dismiss for Improper
14 Venue, or, in the Alternative, to Transfer Venue.

15    IT IS THEREFORE ORDERED that defendant's Motion to
16 Dismiss the Complaint, in the Alternative, to Transfer Venue
17 (Docket No. 8) be, and the same hereby is, DENIED on the
18 condition that within 30 days from the date this Order is signed
19 plaintiff submits evidence that plaintiff owns the trademark at
20 issue.

21 Dated:  May 2, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

22